UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

NAUTILUS INSURANCE COMPANY,  )
                             )
         Plaintiff,          )
                             )
v.                           )    Case No. 22-CV-0064-CVE-JFJ
                             )
FANTASIA HOOKAH LOUNGE, LLC, )
MOHAMMAD ZAKIE ALSHAMMAT,    )
JJG PROPERTIES, LLC, and     )
JORGE HERNANDEZ,             )
                             )
         Defendants.         )

# OPINION AND ORDER

Before the Court is plaintiff Nautilus Insurance Company's ("Nautilus") motion for summary judgment (Dkt. # 36). Plaintiff requests that the Court enter judgment in its favor declaring that it has no duty to defend or indemnify defendants Mohammad Zakie Alshammat, Fantasia Hookah Lounge, LLC ("Fantasia"), and JJG Properties, LLC ("JJG"), with respect to the state court lawsuit commenced by defendant Jorge Hernandez or otherwise in relation to the incident that occurred on June 15, 2019.[1]  Defendants argue that the Court should declare that the insurance policy issued by Nautilus requires plaintiff to defend Fantasia and Alshammat in the underlying state action, and, in the event of adverse judgments, to indemnify them for such judgments. For the reasons set forth below, the Court grants plaintiff's motion for summary judgment and declares that plaintiff is under no duty to defend or indemnify the insureds in the state court lawsuit.

---

[1]  All parties in their briefings for summary judgment mistakenly identified the date of the shooting as January 15, 2019–which would have been before the effective date of the insurance policy in question. It is clear from the second amended complaint (Dkt. # 36-1), the criminal information (Dkt. # 36-4), and the summary judgment record as a whole that the incident actually occurred on June 15, 2019.

I.

The following facts are undisputed in the summary judgment record:[2]

Fantasia is an Oklahoma limited liability company that operated a hookah lounge located at 4401 South Memorial Drive in Tulsa, Oklahoma on June 15, 2019. Dkt. # 36-1, at 1. Alshammat is an Oklahoma resident who was the owner and operator of Fantasia at the time of the subject incident. Dkt. # 36-1, at 1; Dkt. # 58, at 8. JJG is an Oklahoma limited liability company that owned and leased the premises located at 4401 South Memorial Drive–including the "on-site parking"–to Alshammat, doing business as Fantasia. Dkt. # 58, at 8-9.

On June 15, 2019, at approximately 2:00 a.m., a fistfight broke out among four individuals in the parking lot of the Fantasia hookah lounge.[3] Dkt. # 36, at 2; Dkt. # 36-1, at 4. Two of Fantasia's bouncers, Matthew Christman and Mohammed Elkour, were standing near the entrance of the lounge when the altercation started, and proceeded towards the individuals in an effort to break up the fight. Dkt. # 36-1, at 4; Dkt. # 36-2, at 7. Christman observed that one of the other individuals in the parking lot, Armando Rodriguez-Suarez, possessed a gun; he told Elkour to call

---

[2]  The Court supplemented the undisputed material facts listed in the parties' summary judgment briefings with evidence from the summary judgment record to provide a more comprehensive overview of the incident for the purposes of the underlying legal analysis.

[3]  According to defendants' allegations and the deposition testimony of Fantasia bouncers and Hernandez, the Fantasia hookah lounge was a popular destination for individuals who would want to "continue their night" after bars or entertainment venues in the area had closed for the night. Dkt. # 58, at 10; Dkt. # 58-3, at 14-18; Dkt. #36-2, at 4. They allege that many people, including underage individuals, would often gather in the parking lot outside the lounge to consume alcohol. Dkt. # 36-2, at 4. Occasionally, fights would break out in the lot in front of the lounge. Dkt. # 58-3, at 10-12. Fantasia did not have licensed security guards, nor a formal security plan for addressing risk. Dkt. # 58-1, at 18-20. However, Alshammat did employ bouncers who were responsible for checking identification, for ensuring patrons did not bring alcohol or weapons inside the lounge, and for intervening in fights or altercations. Dkt. # 58, at 9.

the police. Dkt. # 36-2, at 7, 14. Elkour, however, continued moving towards the fight in an attempt to intervene. Id. As the fistfight between the individuals escalated, Rodriguez-Suarez fired his gun two times into the air. Id. at 7; Dkt. # 36, at 2; Dkt. # 36-3, at 31. Elkour, who had been focused on breaking up the fight, proceeded towards Rodriguez-Suarez. Dkt. # 36-2, at 14. Rodriguez-Suarez lowered his gun and began firing at both Elkour and Christman, in the direction of the entrance of the lounge. Id. at 7-8. Gunfire ensued between the individuals, and Rodriguez-Suarez shot and killed Elkour. Dkt. # 36, at 2-3. Rodriguez-Suarez then attempted to flee by getting into his vehicle that was parked in the lot. Id.; Dkt. # 36-2, at 8-9.

Christman commanded Rodriguez-Suarez to stop and put his gun down. Id. at 8. Rodriguez-Suarez continued to move around and enter the open door of his vehicle, and pointed his gun at Christman. Id. Christman then fired thirteen uninterrupted shots into the driver side windshield of Suarez's vehicle. Id. at 9. Christman alleges that he fired at Rodriguez-Suarez because Rodriguez-Suarez "was shooting shots towards me." Id. at 14. During this exchange of gunfire, another Fantasia bouncer who had been inside the lounge, Darren Ortiz, ran outside and also began shooting at Suarez, who at this point was inside his vehicle. Dkt. # 36-3, at 36. Ortiz stated that he believed Rodriguez-Suarez would continue firing his gun because the window of his vehicle was rolled down. Id. at 36-37. Rodriguez-Suarez managed to drive out of the parking lot. Id. at 37; Dkt. # 36-2, at 9. Ortiz stated that he then noticed that a young male, Jorge Hernandez, had been shot in the gunfire exchange. Dkt. # 36-3, at 38. It is unknown whether Hernandez–who was a bystander to the altercation–was shot by the bouncers or by Rodriguez-Suarez. Dkt. # 36, at 3. It is undisputed between the parties, however, that Hernandez was injured as a result of the aforementioned shooting. Dkt. # 36, at 3; Dkt. # 50, at 3; Dkt. # 58, at 4. As a result of his gunshot injury, Hernandez suffers

3

permanent paralysis and is now paraplegic. Dkt. # 36-1, at 5. Hernandez was twenty years old at the time of the incident. Id.

On July 1, 2019, Rodriguez-Suarez was charged by information in the District Court of Tulsa County with murder in the first degree for shooting and killing Elkour. Dkt. # 36-4. Rodriguez-Suarez ultimately pled guilty, pursuant to a plea agreement, to manslaughter in the first degree. Dkt. # 36-5.

Hernandez initiated a civil lawsuit in Tulsa County District Court on October 24, 2019, and on May 21, 2021, filed a second amended petition, Hernandez v. Fantasia Hooka Lounge LLC, et al., Case No. CJ-2019-04189 (Tulsa County District Court)("state court lawsuit") against Fantasia, Alshammat, and JJG. Dkt. # 36-1. Hernandez alleged that "as the direct and proximate result of defendants' negligence and the negligence of Fantasia's armed security guards . . . Hernandez suffered serious, debilitating, and permanent injuries, which will require medical care and treatment for the remainder of his life." Id. at 8. His second amended petition in the state court lawsuit alleges as follows:

> Fantasia failed to have sufficiently trained and qualified security personnel to handle the [i]ncident in the parking lot . . . to prevent and/or protect the injury to Hernandez from occurring. Fantasia allowed insufficiently trained and unqualified security personnel to carry weapons in the performance of their duties as security guards[.] [The bouncers] failed to observe and report to law enforcement any misconduct which required law enforcement intervention . . . and recklessly and wantonly engaged [Suarez] in a gun battle in the presence of innocent bystanders . . . which caused the [i]ncident to escalate into a full blown shoot-out. Defendants knew or should have known for months, if not years, that their business invitees gathered in their parking lot to consume alcohol and/or to engage in other activities likely to endanger the safety of such invitees. Defendants . . . failed to provide a security plan or adequate security personnel, and JJG and Alshammat failed to require Fantasia to provide a security plan or adequate security for the parking lot of the business premises and its parking lot.

Id. at 7. The state court second amended petition seeks actual and punitive damages for Hernandez's past and present pain and suffering, lost earnings, reduced life expectancy, and his permanent disfigurement. Id. at 8.

Nautilus is a surplus lines insurer not licensed to transact business in Oklahoma. Dkt. # 36, at 4. Specialty Insurance Managers of Oklahoma, Inc. ("Specialty") is Nautilus's managing general agent in Oklahoma and has the authority to "quote, bind, underwrite, and issue Nautilus policies." Id. On January 23, 2019, Fantasia's insurance agent, Harmon Insurance (Harmon), engaged Specialty to procure a quote for an insurance policy for Fantasia's hookah lounge business. Id.; Dkt. # 50, at 8. Nautilus authorized Specialty to provide a quote on the condition that the insurance policy would include an all assault or battery exclusion. Dkt. # 36, at 4; Dkt. # 50, at 4. On January 25, 2019, Specialty provided Harmon a quote for a Nautilus policy to be issued to Fantasia; the quote "identifie[d] the forms and endorsements that would comprise the [] policy," including an all assault or battery exclusion (Assault or Battery Exclusion). Dkt. # 36, at 4; Dkt. # 50, at 8. After discussion between Specialty and Harmon and a few revisions to the quoted policy,[4] Specialty confirmed Harmon's request to bind coverage. Dkt. # 36, at 4.

Nautilus authorized Specialty to issue Policy No. NC541257 to "Fantasia Hookah Lounge, LLC" for the period February 5, 2019 to February 5, 2020. Id. at 5. This policy was the first and only Nautilus insurance policy issued to Fantasia. Id. At the time of the June 15, 2019, incident, the policy issued by Nautilus to Fantasia was in effect. It provides:

---

[4] The revisions to the quote pertained to replacement cost coverage and a theft exclusion clause in the commercial property coverage form. Dkt. # 36, at 4. The parties agree that the Assault or Battery Exclusion was included in the quoted policy at all times, and it was their understanding that insurance coverage would be subject to that exclusion. Dkt. # 50, at 10.

5

> We [Nautilus] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily inujry" or "property damage" to which this insurance does not apply.

Dkt. # 36-7, at 19 (cleaned up). The general liability policy form specifically excludes from coverage:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Id. at 20. ["Expected or Intended Injury Exclusion"]. The policy also contains the following Assault or Battery Exclusion which states, in part:

> Regardless of culpability or intent of any person, this insurance does not apply to 'bodily injury', 'property damage', 'personal and advertising injury' or medical payments arising out of any:
> 1.    Actual or alleged assault or battery;
> 2.    Physical altercation; or
> 3.    Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security
>
> This exclusion applies regardless of whether such actual or alleged damages are caused by any:
> 1.    Insured;
> 2.    'Employee';
> 3.    Patron; or
> 4.    Any other person; and
> whether or not such damages occurred at any premises owned or occupied by any insured.

Id. at 42. The policy also states that "[Nautilus] will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation." Id.

Following commencement of the lawsuit by Hernandez, Nautilus agreed to defend Fantasia and its member, Alshammat, against the underlying suit, subject to a reservation of rights to deny coverage and withdraw its defense should it be determined that the policy does not cover the claims against them. Dkt. # 36, at 8. On February 10, 2022, plaintiff filed the instant case, seeking a declaration of its rights and obligations under the insurance policy. Thereafter, plaintiff moved for summary judgment (Dkt. # 36). Hernandez filed a response to the motion (Dkt. # 50), arguing that plaintiff has a duty to defend or indemnify Fantasia and Alshammat in the underlying suit. JJG filed a response to the motion (Dkt. # 58), adopting and incorporating Hernandez's arguments and additionally asserting that Nautilus should also indemnify JJG, a nonparty to the insurance policy, on the basis of its commercial lease with Alshammat and Fantasia. Alshammat and Fantasia respectively filed responses to plaintiff's motion (Dkt. ## 91, 92), adopting and incorporating Hernandez's response (Dkt. # 50).[5]

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---

[5] Both Alshammat and Fantasia identified the incorrect docket number when referring to "Jorge Hernandez's [r]esponse to Nautilus's [motion for summary judgment]" in their respective responses to plaintiff's motion. Dkt. # 91, at 1; Dkt. # 92, at 1. They both refer to "Dkt. # 58", which corresponds with JJG's response to plaintiff's motion for summary judgment, not Jorge Hernandez's. The Court assumes that Alshammat and Fantasia intend to incorporate and adopt the arguments set forth by Jorge Hernandez (Dkt. #50).

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III.

#### A.

"An action for declaratory relief is appropriate to resolve coverage disputes between the insurer and insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 305 (Okla.1996); see Safeco Ins. Co. of America v.Sanders, 803 P.2d 688 (Okla. 1990) (answering certified questions of Oklahoma law for the Northern District of Oklahoma where carrier brought declaratory judgment action against insureds for determination of non-liability); Ohio Casualty Ins. Co. v. Todd, 813 P.2d 508 (Okla. 1991) (answering certified questions of Oklahoma law where

insurer pressed for relief declaring that it had no duty to defend the insured). The action before this Court does not involve the same factual issues before the state court. The outcome of the underlying state action will not impact the instant action, nor will the ruling in this case impact the result in the state case. See Essex Ins. Co. v. Yi, 795 F. Supp. 319, 322 (N.D. Cal. 1992); Colton v. Swain, 527 F.2d 296, 3030 (7th Cir. 1975). Therefore, the question of plaintiff's duty to defend is ripe for declaratory relief.

**B.**

"Liability insurance policies generally impose two duties on the insurer—the duty to defend and the duty to indemnify." Above It All Roofing & Constr., Inc. v. Sec. Nat'l Ins. Co., 285 F. Supp. 3d 1224, 1233 (N.D. Okla. 2018). The duty to defend "is separate from, and broader than, the duty to indemnify" and is determined on the basis of information gleaned from the parties' pleadings. Turley, 928 P.2d at 303. Under Oklahoma law, an "insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy." Id. (emphasis in original). Even if coverage may not ultimately be provided, an insurer must defend an action when recovery is *possible*. See id. While broad, this duty to defend is evidently limited by the language of the policy; an insurer does not have a duty to defend, for example, "if the claims in the underlying action fall within an exclusion from coverage." Scottsdale Ins. Co. V. Owl Nite Sec., Inc., No. 06-CV-0097, 2006 WL 3742102, at *4 (N.D. Okla. Dec. 15, 2006). The duty to indemnify is narrower and contingent upon liability in the underlying action. An "insurer is required to provide indemnity for loss or to pay a specified amount" if the insured is held liable in the underlying action and if the policy provides coverage for the claims made against the insured. Turley, 928 P.2d at 303.

"Whether plaintiff owes a duty to defend or indemnify depends on the interpretation of the [p]olicy." See Owl Nite, 2006 WL 3742102, at *4. Under Oklahoma law, insurance policies are contracts. See OKLA STAT. tit., 36 § 102; BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835 (Okla. 2005). "An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991). Parties to an insurance contract are "bound by the terms of contract and courts will not undertake to rewrite terms thereof." Id. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Id.

Under Oklahoma law, determining whether an insurance contract is ambiguous is a matter of law for the Court to decide. See Yousuf v. Cohlmia, 741 F.3d 31, 38 (10th Cir. 2014) (quoting Dodson, 812 P.2d at 376). "A provision is ambiguous if it is facially susceptible to two interpretations, considered from the standpoint of a reasonably prudent layperson." MTI, Inc. v. Emps. Ins. Co. of Wausau, 913 F.3d 1245, 1249 (10th Cir. 2019). "If the terms are unambiguous, clear, and consistent, then they are accepted in their plain and ordinary sense." Owl Nite, 2006 WL 3742102, at *4 (citing Dodson, 812 P.2d, at 376). "The first step in interpreting an insurance contract is to consider whether the event at issue is covered by the 'general declaration of insurance coverage, as established by the insurance policy and limited by its provisions.'" Nationwide Mut. Ins. Co. v. Prater, 638 F. App'x 659, 664 (10th Cir. 2015) (quoting Dodson, 812 P.2d at 377).[6] "If

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

the event is covered under the general declarations of coverage or an endorsement, then the court considers whether it is nevertheless excluded from coverage by any policy exclusions." Prater, 638 F. App'x at 664. Policy exclusions "are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." Dodson, 812 P.2d at 377. "The insured has the burden of showing that its claim is covered under the policy." Boggs v. Great Nation Ins. Co, 659 F. Supp. 2d 1199, 1204 (N.D. Okla. 2009). "In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." Dodson, 812 P.2d at 377.

### IV.

Plaintiff argues that it owes no duty to defend or indemnify Fantasia or Alshammat because the Assault or Battery Exclusion in the policy excludes coverage for claims arising out of the June 15, 2019 shooting. Defendants advance various arguments opposing plaintiff's motion, including: (1) that the Assault or Battery Exclusion does not apply because neither Rodriguez-Suarez nor the bouncers *intended* to commit an assault or battery; (2) that the negligence of Alshammat, Fantasia, and JJG in failing to provide safe premises is a concurrent cause of action that is not excluded under the insurance policy; and (3) that there exists ambiguity between the Expected or Intended Injury Exclusion and the Assault or Battery Exclusion, which should be resolved in defendants' favor. Defendants argue that Nautilus has a continuing duty to defend based on these underlying facts and that it is premature to decide whether Nautilus has a duty to indemnify Fantasia and Alshammat.[7]

---

[7] The Court does not address the arguments advanced in JJG's response to plaintiff's motion because they are immaterial to plaintiff's motion for summary judgment. See Orr v. City of Albuquerque, 417 F.3d 1144, 1154 (10th Cir. 2005) ("We will not address this issue [when reviewing the summary judgment motion] because it has no bearing on the ultimate outcome of this case.")

11

The Court is unpersuaded by defendants' arguments and finds that the undisputed facts in the summary judgment record do not give rise to the potential of liability under the policy. See Turley, 928 P.2d at 303. The Court addresses each argument in turn.

First, defendants argue that even if the policy is clear on its face, no assault or battery occurred because no party involved in the shooting *intended to commit* an assault or battery. The Court disagrees. Hernandez's injuries that give rise to his state court lawsuit arise entirely from the June 15, 2019, shooting; it is apparent, then, that any claim for coverage under the Nautilus policy falls under the Assault or Battery Exclusion. The exclusion provides that "*[r]egardless of culpability or intent of any person*, this insurance does not apply to 'bodily injury' . . . arising out of any *actual or alleged* assault or battery; physical altercation; or *any act or omission in connection with the prevention or suppression of such acts*, including the alleged failure to provide adequate security." Id. (cleaned up) (emphasis added). The undisputed facts in the record sufficiently demonstrate that a physical altercation among individuals in the parking lot progressed to an exchange of gunfire, the result of which permanently injured Hernandez. The Court need not determine the mens rea of each actor involved because the unambiguous language of the exclusion excludes coverage of the insureds' conduct regardless of the culpability–or lack thereof–of the involved actors. See Mesa Underwriters Specialty Ins. Co. v. Boot Scooters, LLC, No. CIV-18-806-R, 2019 WL 4918766, at *3 (W.D. Okla. Oct. 4, 2019) ("[I]t is irrelevant how [petitioner] may have pled his claims in state court, the Court must [instead] focus on the relevant language in the insurance policy.") (citing James Rivers Ins. Co. v. Blue Ox Dance Hall, LLC, No. 16-cv-0151, 2017 WL 2367052, * 5 (N.D. Okla. May 31, 2017)). Hernandez suffered "bodily injury" in the form of a gunshot wound. While it is unclear who actually shot Hernandez, there is

no doubt that the shooting was an "actual or alleged assault or battery," or as to the bouncers' conduct, an "act in the prevention or suppression of such acts." Moreover, the shooting arose from a fist fight in the parking lot, which is a "physical altercation." The exclusion applies regardless of whether the individuals involved in the incident intended to engage in the shooting. The Court finds that the unambiguous language of the policy's Assault or Battery Exclusion excludes coverage for any claims in the underlying suit.

As to defendants' second argument, the fact that Hernandez alleges a negligence cause of action in the underlying suit instead of an assault or battery cause of action bears no relevance to the Court's consideration of the unambiguous Assault or Battery Exclusion. Id. "Courts . . . have routinely applied and upheld the assault and battery exclusion, even when the words 'assault' and/or 'battery' were not used in the Complaint and the plaintiff framed his claims in terms of negligence." Essex Ins. Co. v. Wake Up Too, Inc., No. 2:07CV312, 2009 WL 357987, at *8 (D. Utah Feb. 12, 2009). Hernandez's negligence allegations against Fantasia and Alshammat for failing to maintain a safe premises and failing to provide adequate security does not automatically trigger coverage under the Nautilus insurance policy.[8] Blue Ox Dance Hall, 2017 WL 2367052, at *5 ("All of the claims alleged by Sanchez and Peterson fall within the scope of the assault and battery waiver, even though Sanchez and Patterson have alleged their claims against [defendants] in terms of negligence instead of assault and battery.") In fact, the Assault or Battery Exclusion explicitly provides that

---

[8] The Court acknowledges that Oklahoma law recognizes a claim for negligence for breaching the duty to provide adequate precautions against criminal activity. See Bray v. St. John Health Sys., Inc., 187 P.3d 721, 725 (Okla. 2008) ("Thus, the place and character of [the hospital's] parking garage and [the hospital's] past experience with a high rate of crime on its property gave rise to a duty to provide adequate precautions against criminal activity in its parking garage.").

insurance does not apply to "bodily injury resulting from *any act or omission* in connection with the prevention or suppression of such acts, including the *alleged failure to provide adequate security*." Dkt. # 36-7, at 42.  Notwithstanding this clear provision, any negligence claims alleged by plaintiff in the underlying suit arise out of the injuries Hernandez received during the shooting, and he has not alleged any other physical injuries aside from the June 15, 2019 incident that could trigger coverage under the Nautilus policy.[9]  City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P.2d 189, 190 (Okla. 1938) ("[I]f the negligence merely creates a condition by which the injury is made possible, and a subsequent independent act of some other person causes the injury, the defendant is not liable. This is because the negligence is not the proximate cause of the injury."); see, e.g., Essex

---

[9]  In asking the Court to consider the concurrent proximate cause rule, Hernandez relies on Above It All Roofing & Constr., Inc. v. Sec. Nat'l Ins. Co., 285 F. Supp. 3d 1224 (N.D. Okla. 2018), to support his argument that a separate concurrent cause of action would trigger coverage under the policy.  In Above it All Roofing, a lead pipe fell and damaged merchandise inside a store, forcing the store owner to close.  Id. at 1234.  The damage to the roof and subsequent repairs undertaken by the roofing company then allowed asbestos to percolate in the store, resulting in more damage.  Id.  Property damage resulting from asbestos was specifically excluded by the insurance policy.  The court concluded in that case that the negligent workmanship related to the lead pipe fall was a proximate cause of the store owner's loss, and was therefore covered under the insurance policy, "notwithstanding the fact that an event in the chain of causation was specifically excluded from coverage." Id. at 1235.  The court grounded its reasoning in the fact that two distinct instances of damage resulted from the two proximate causes.  Id. ("The 24–foot pipe that fell through the ceiling resulted in damage to O'Keefe's leasehold and merchandise, regardless of whether asbestos fell on that merchandise.").  The reasoning in Above it All Roofing does not support Hernandez's argument, and the facts are entirely inapposite to the facts here.  Hernandez argues that "Fantasia's negligence in failing to provide safe premises subjected its patrons to any number of potential dangers" and his injury resulted from such negligence. Dkt. # 50, at 18.  Hernandez, however, has not demonstrated any distinct injuries suffered by him or others–aside from the shooting perpetrated by a third party on June 15, 2019–that resulted due to Fantasia's alleged negligence.  The Court reiterates that the issue here is whether the Assault or Battery Exclusion excludes coverage for Hernandez's injuries, regardless of whether Hernandez can proceed with a negligence cause of action under Oklahoma law in state court against Fantasia.

14

Ins. Co. v. Vincent, 52 F.3d 894, 896 (10th Cir. 1995) (noting that "there appears to be little question that the assault and battery exclusion, standing alone, would bar coverage for the underlying suit" when victim was killed by an escaped resident of a halfway house and the victim's family sued the halfway house for negligence). While the Court recognizes that Hernandez may indeed have a separate negligence cause of action under Oklahoma law, at issue here is not what cognizable causes of action Hernandez may allege, but whether Hernandez's claim is covered by the policy. The Court finds that the Assault or Battery Exclusion unambiguously excludes coverage.

Finally, despite defendants' arguments to the contrary, the policy is unambiguous that the Assault or Battery Exclusion applies. Defendants assert that the Expected or Intended Injury Exclusion–which states "this exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property"–applies to or modifies the Assault or Battery Exclusion and creates ambiguity as to whether the latter exclusion contains a reasonable force exception. Dkt. # 36-7, at 20. Defendants allege that this exception limits the applicability of the Assault or Battery Exclusion in the event the bouncers did act with reasonable force to protect themselves and others in the parking lot. The Court disagrees.

In a previous case, the Court noted that "[t]he existence of the 'reasonable force' exception to [an] Expected or Intended Injury Exclusion does not render [a] [p]olicy ambiguous." Owl Nite, 2006 WL 3742102, at *6. "As noted above, exceptions in insurance policies are read "seriatim," meaning that "each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions." Id. (citing Dodson, 812 P.2d at 377). The Expected or Intended Injury Exclusion is located in the Commercial General Liability Part, which is a general declaration of coverage. The Assault or Battery Exclusion, which is distinct and

separate from the general coverage form, operates independently of the Expected or Intended Injury Exclusion. The reasonable force exception cannot limit the effect of the separate Assault or Battery Exclusion, and cannot be read to create ambiguity in the policy.

The structure and language of the policy itself supports this interpretation. The first line of the Assault or Battery Exclusion states "this endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part," which is precisely the section that contains the Expected or Intended Injury Exclusion. Dkt. # 36-7, at 42. The policy also states, in the heading, that "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. Defendants' argument that there exists ambiguity between that clause and the Assault or Battery Exclusion contradicts the clear language of the policy and this Court's precedent. The Assault or Battery Exclusion is independent, unambiguous, and not limited by a reasonable force exception.

In summary, the Court holds that plaintiff is under no duty to defend or indemnify the insureds in the underlying state court action because it has sufficiently demonstrated that there is no potential for liability under the policy. The Assault or Battery Exclusion excludes coverage for claims arising out of Hernandez's injuries suffered during the June 15, 2019 incident. The exception to the Expected or Intended Injury Exclusion for reasonable force does not change the Court's analysis. Therefore, the Court grants plaintiff's motion for summary judgment.

**IT IS THEREFORE ORDERED** that plaintiff Nautilus Insurance Company's motion for summary judgment (Dkt. # 36) is hereby **granted**. The Court declares that plaintiff is under no duty to defend or indemnify the insured defendants under the policy at issue with respect to the underlying state court lawsuit.

**IT IS FURTHER ORDERED** that objections to deposition designations (Dkt. ## 66, 67) are **moot**.

A separate judgment is entered herewith.

**DATED** this 30th day of October, 2023.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE